# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9354 | **DATE** | 1/13/2005 |
| **CASE TITLE** | Bridges vs. Metro Water | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Court grants Defendant's Motion for Summary Judgment (R. 72-1) as to Plaintiff Gladis Bridges. Defendant's Motion to Strike Bridges' Local Rule 56.1(b) Statement of Material Facts (R. 105-1) is denied as moot. In light of the granting of Defendant's summary judgment motion as to Plaintiff Bridges, Plaintiff Yarn's Motion for Severance (R. 81-1) is denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 14 2005 | |
| | Notified counsel by telephone. | | date docketed | 112 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| TH✓ | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GLADIS BRIDGES and SABINA YARN, | ) | **DOCKETED** |
| | ) | |
| Plaintiffs, | ) | JAN 1 4 2005 |
| | ) Case No. 02 C 9354 | |
| v. | ) | |
| | ) | |
| METROPOLITAN WATER | ) | |
| RECLAMATION DISTRICT OF | ) | |
| GREATER CHICAGO, | ) | JAN 1 4 2005 |
| | ) | |
| Defendant. | | |

### MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

In their Second Amended Complaint, Plaintiffs Gladis Bridges and Sabina Yarn allege that Defendant Metropolitan Water Reclamation District of Greater Chicago ("the District") discriminated against them based on their race, sex, and age; retaliated against them; and subjected them to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Before the Court is the District's Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c) against both Plaintiffs. For the sake of clarity, the Court will address each motion for summary judgment in a separate opinion. The Court thus turns to the District's Motion for Summary Judgment as to Plaintiff Gladis Bridges.

### I. UNDISPUTED FACTS

#### A. The Parties

Defendant Metropolitan Water Reclamation District of Greater Chicago ("the District") is a local governmental unit that provides sewage treatment and related services to most of Cook County, Illinois. (R. 74-1, Def.'s Local Rule 56.1 Statement, ¶ 2.) On March 23, 1988, the

District hired Plaintiff Gladis Bridges, an African-American, as a Senior Clerk Typist. (Def.'s Stmt. ¶¶ 2, 3; R. 93-1, Pl.'s Local Rule 56.1 Statement, ¶¶ 1, 2.)

Currently, Bridges is a Senior Office Support Specialist in the District's Research and Development Department. (Def.'s Stmt. ¶ 1.) A Senior Office Support Specialist is responsible for typing and office work of above-average difficulty and responsibility. (*Id.* ¶ 4.) A Support Specialist's responsibilities include the keeping of operating, financial, and unit records, as well as purchasing and accounting data. (*Id.*) Bridges' other duties involve screening and directing calls and visitors; entering, retrieving and updating computerized file information; reviewing documents for completeness and accuracy; copying, distributing and faxing materials; organizing and maintaining the office supply area and inventory; providing relief for other clerical positions as needed; and providing assistance in other sections when requested. (*Id.*)

### B. Bridges' Work History

In or about November 1995, Bridges sought a promotion to the position of Principal Clerk Typist, which is one step or level above Senior Clerk Typist. (Pl.'s Stmt. ¶¶ 3, 4.) To obtain the position of Principal Clerk Typist, the District requires all applicants to take an examination whether they are current employees or new hires. (*Id.* ¶ 6.) Candidates who successfully complete the examination are placed on either the Promotional Eligible List or the Original Entrance List. (*Id.* ¶¶ 6, 7.) All certified candidates, whether from the Promotional Eligible List or the Original Entrance List, are equally eligible for an appointment. (*Id.* ¶ 16.) Bridges' name was on Promotional Eligible Lists for Principal Clerk Typist/Principal Office Support Specialist in 1995, 1997, and 1999. (*Id.* ¶ 14.) The District did not promote Bridges off of the 1995, 1997, or 1999 Promotional Lists. (*Id.* ¶¶ 19, 22, 29.) The last appointment from the

1999 Promotional Eligible list occurred on May 2, 2001. (Def.'s Stmt. ¶ 75.) The District did not promote Bridges to this appointment. (*Id.* ¶ 29.) Bridges did not apply for the promotional exam given in 2003. (*Id.* ¶ 76.)

In June of 1997, Bridges wrote a letter to the District's Civil Service Board inquiring why she was the only candidate left on the Promotional Principal Clerk Typist List, and why the District was not following the policy stated on the job announcements that "where both Original Entrance and Promotional eligible lists results from an examination process, it is the District's practice to appoint only from the Promotional eligible list until all names from that list have been considered." (*Id.* ¶¶ 16, 23, Pl.'s Ex. A, B.) In a letter dated June 16, 1997, F. D. O'Brien, the Director of Personnel, responded to Bridges' inquiry explaining the selection process:

> When 5 or more names appear on a Promotional list, it is District policy to hire from the Promotional list. Once fewer than 5 individuals are available on the Promotional list, the District policy is to consider individuals from both the Promotional and Open lists.
>
> Interviewers make selections to fill positions based on overall, professional qualifications of individuals interviewing and hire based on these qualifications. It is the policy of the District to not discriminate against any individuals because of race, sex, color, disability, age, religion or national origin.

(*Id.* ¶¶ 24, 25, Pl.'s Ex. D.)

### C. Bridges' Discrimination Charges

On July 16, 1997, Bridges filed a charge with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC") alleging that the District retaliated and discriminated against her based on her race and age by failing to promote her and by subjecting her to unequal terms and conditions of employment. (Def.'s Stmt. ¶ 22.) The IDHR first investigated and then dismissed the charge. (*Id.* ¶ 23.) The Chief Legal Counsel

affirmed the IDHR decision on April 30, 1999. (*Id.*) Bridges did not appeal the order of the Chief Legal Counsel. (*Id.* ¶ 24.) The EEOC adopted the findings of the IDHR and issued Bridges a right to sue letter on May 30, 2001. (*Id.* ¶ 25.) Bridges did not file a lawsuit based on the May 30, 2001, right to sue letter. (*Id.* ¶ 26.)

On July 31, 2002, Bridges filed a complaint under the District's internal GS Directive 00-1, which Frances Wilkins, the District's EEO and Training Manager, administered. (*Id.* ¶¶ 61, 62.) In her internal complaint, Bridges alleged that her supervisor Joleen Graff harassed her based on her race, color, sex and disability from 2000 to 2002. (*Id.* ¶ 62.) Bridges' complaint did not contain any failure to promote allegations. (*Id.*) Wilkins accepted Bridges' complaint for processing based on race, but concluded that no allegations supported a claim of color, sex, or disability discrimination. (*Id.* ¶ 63.) Wilkins' staff investigated Bridges' internal complaint and issued a report on November 29, 2002, concluding: "The results of the investigation do not support Ms. Bridges' allegations that she was treated differently because of her race (black) or that unfair treatment of any kind took place." (*Id.*) Accordingly, the staff did not recommend remedial action. (*Id.*)

Bridges filed an EEOC charge on September 19, 2002, alleging that the District harassed her on the basis of race, color, age, and sex. (*Id.* ¶ 64.) Bridges filed another EEOC charge on February 13, 2003, alleging that the District failed to promote her because of her race, color, age, and that the District retaliated against her. (*Id.* ¶ 65.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

4

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The existence of a factual dispute is not sufficient to defeat a summary judgment motion, instead the non-moving party must present definite, competent evidence to rebut the summary judgment motion. *See Vukadinovich v. Board of Sch. Trs.*, 278 F.3d 693, 699 (7th Cir. 2002) (quotation and citation omitted).

## III. STATUTE OF LIMITATIONS

Under Title VII, a plaintiff must file an employment discrimination charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see also National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 104-05, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). In general, federal courts only consider evidence from this 300-day period when making Title VII determinations, however, because the statute of limitations is not jurisdictional it is subject to equitable considerations. *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 270 (7th Cir. 2004).

In the Second Amended Complaint, Bridges alleges that the District did not promote her based on her race, sex, and age. The District contends that because Bridges filed her EEOC charge regarding her failure to promote claim on February 13, 2003, and that the last promotion for which she applied and was eligible occurred more than 300 days earlier, on May 2, 2001,

Bridges' failure to promote claim is time-barred. Bridges, on the other hand, asserts that the statutory period should be equitably tolled because she was on the Promotional List, and thus eligible to apply for a promotion until November of 2002. Also, Bridges argues that the Court should toll the limitations period because the District did not complete its investigation into her internal discrimination complaint until November of 2002.

Under the equitable doctrine of tolling, courts may toll the statute of limitations until the plaintiff knew or by reasonable diligence should have known of the injury and its cause. *CSC Holding, Inc. v. Redisi,* 309 F.3d 988, 992 (7th Cir. 2002). "An abstract fear of wrongdoing is not enough," instead, "the statute begins to run once a plaintiff has knowledge which would lead a reasonable person to investigate the possibility that her legal rights had been infringed." *Id.* at 992-93 (citations omitted).

Here, although Bridges was eligible to apply for a promotional position until November of 2002, the District last denied her a promotion in May of 2001. Bridges knew that the District had denied her a promotion in May of 2001, thus the statute began to run on the date of her rejection. Further, the opportunity for Bridges to apply for a another position until November of 2002 is irrelevant because whether the District would deny any such promotion is "an abstract fear of wrongdoing" and not an actual injury. *See id.* at 992.

Bridges also argues that the Court should toll the statute of limitations until November of 2002 when the District completed its investigation into her internal complaint. Bridges filed her internal complaint on July 31, 2002, in which she alleged that her supervisor Joleen Graff harassed her because of her race, color, sex, and disability from 2000 to 2002. Bridges' internal complaint, however, did not contain any failure to promote allegations. Accordingly, there was

no investigation into her failure to promote claim, and therefore, the completion of this investigation did not prohibit Bridges from filing her failure to promote claim with the EEOC in a timely fashion.

Next, Bridges contends that her failure to promote claim falls under the equitable doctrine of a continuing violation, and thus the Court may look to evidence outside of the 300-day period. *Dandy*, 388 F.3d at 270; *see also National R.R. Passenger*, 536 U.S. at 113-15. A plaintiff may establish a continuing violation under one of the following theories: (1) the employer made employment decisions over a period of time making it difficult for the employee to determine the actual date of discrimination; (2) the employer relied on an express policy of discrimination; or (3) the separate acts of discrimination were part of an ongoing pattern and at least one of the acts occurred within the relevant limitations period. *See Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 707-08 (7th Cir. 2002); *see also National R.R. Passenger*, 536 U.S. at 120.

Bridges does not argue that it was difficult to determine the actual date of discrimination or that the District had an express policy of discrimination. Instead, she contends that the separate incidences in which the District did not promote her form an ongoing pattern of race discrimination. Bridges' argument under the third theory fails. Even if the Court concluded that the District's failure to promote Bridges constituted an ongoing, discriminatory pattern, Bridges' last attempt at a promotion was in May of 2001, which occurred over 300 days before she filed her complaint with the EEOC on February 13, 2003. Therefore, the last discrete act did not occur within the relevant limitations period. Accordingly, Bridges' failure to promote claim is time-barred.

7

## IV. ANALYSIS

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

### A. Race Discrimination[1]

A plaintiff alleging race discrimination may proceed along one of two routes in proving her case – the direct method of proof or the indirect, burden-shifting method of proof pursuant to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Because Bridges has not presented any direct evidence of race discrimination, the Court must determine whether Bridges has established a prima facie case of discrimination. To establish a prima facie case of race discrimination, a plaintiff must show that (1) she is a member of a protected class, (2) she was meeting her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) her employer treated similarly-situated employees outside her protected class more favorably. *Id.*; *Sartor v. Spherion Corp.*, 388 F.3d 275, 279 (7th Cir. 2004). A plaintiff must establish each element of a prima facie case before the Court reaches the issue of pretext. *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 300 (7th Cir. 2004).

Here, the District contends that Bridges cannot demonstrate the third prima facie element of her prima facie discrimination claim – that she suffered a materially adverse employment

---

[1] In the Second Amended Complaint, Bridges alleges sex and age discrimination in the context of her failure to promote claim – claims which the Court has concluded are time-barred under 42 U.S.C. § 2000e-5(e)(1). Therefore, the Court will only discuss Bridges' disparate treatment claim based on race.

8

action. Courts have defined "adverse employment action" broadly to include such actions as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or some other action causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *McKenzie v. Milwaukee County*, 381 F.3d 619, 625 (7th Cir. 2004). Not everything that makes an employee unhappy or inconveniences an employee is an adverse employment action. *See Heron*, 388 F.3d at 301; *Bell v. Environmental Protection Agency*, 232 F.3d 546, 555 (7th Cir. 2000).

Bridges does not make any arguments in her memorandum to the Court supporting her disparate treatment claim as alleged in Count I of the Second Amended Complaint. Nonetheless, the Court concludes that her allegations do not amount to an adverse employment action. These allegations include Bridges' claims (1) that she filled in for other secretaries and performed other duties that were not in her job description, (2) that the District gave her a desk next to the men's restroom, (3) that certain co-workers did not want their work assigned to her, (4) that non African American co-workers printed their materials over hers on their shared printer, (5) that the District issued her two warnings, (6) that one of her supervisors did not train her, and (7) that she was harassed for using personal or sick days.

These alleged actions are not adverse employment actions because they do not constitute a significant change in Bridges' employment status. *See Ellerth*, 524 U.S. at 761. Specifically, Bridges' first complaint is refuted by her job description as a Senior Office Support Specialist. The second, third, fourth, and fifth allegations are minor annoyances and matters which do not typically involve adverse employment actions. *See Herron*, 388 F.3d at 301; *Griffin v. Potter*, 356 F.3d 824, 829-30 (7th Cir. 2004) (citing cases). Finally, Bridges admits that there are no facts

9

in the record that support her allegations that her supervisor did not train her based on her race and that she was harassed for using personal or sick days. (Def.'s Stmt. ¶¶ 10, 20, 21.) In sum, Bridges has failed to establish that these incidences establish a quantitative or qualitative change in the terms or conditions of her employment. *See Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 532 (7th Cir. 2003). Accordingly, Bridges did not suffer an adverse employment action, and thus her disparate treatment claim under Count I fails.

**B.     Retaliation**

Bridges contends that after she complained to the District's EEO and Training Manager about the District denying her a promotion, along with subsequent complaints of discrimination, she experienced a work atmosphere of retaliation and unequal treatment. A plaintiff may pursue a retaliation claim through either the direct or indirect methods of establishing discriminatory intent. *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Because Bridges has not set forth any direct evidence of retaliation, the Court turns to the indirect burden of establishing a retaliation claim.

An employee may establish a prima facie case of retaliation under the indirect method by showing that (1) she engaged in a protected activity, (2) she was performing her job according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) she was treated less favorably than similarly situated employees who did not engage in the statutorily protected activity. *Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir. 2004). Under the indirect method, a plaintiff's failure to satisfy one of the prima facie elements is fatal to her retaliation claim. *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 560 (7th Cir. 2004).

Again, Bridges must establish that she suffered an adverse employment action as part of

her prima facie case of retaliation. As discussed above, Bridges' only argument in support of establishing an adverse employment action is that the District did not promote her based on her race. The Court, however, has concluded that Bridges' failure to promote claims are time-barred. This leaves Bridges with the same actions as alleged in Count I of her complaint, that is, incidences that are too minor to constitute adverse employment actions or allegations that are not supported by the record. Therefore, Bridges has failed to satisfy the third element of her prima facie case of retaliation, and the Court grants summary judgment on Bridges' retaliation claim.

### C.     Hostile Work Environment[2]

Title VII prohibits an employer from "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To prevail on a hostile work environment claim, a plaintiff must establish that: (1) she was subjected to unwelcome harassment; (2) the harassment was based on her race; (3) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (4) there is a basis for employer liability. *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004).

Once again, Bridges does not make any arguments in her memorandum to the Court supporting her hostile work environment claim as alleged in Count V. Thus, the Court turns to the allegations in the Second Amended Complaint. Bridges' claim is not the customary racial harassment claim because she does not allege that she was the target of any racial remarks or

---

[2] Although Bridges' hostile work environment claim in Count V is also based on age and sex, Bridges did not allege instances of conduct involving gender or age discrimination. Indeed, there are no such incidences in the record. Therefore, her hostile work environment claims based on age and sex fail.

overtly race-related conduct. *See id.* Instead, Bridges alleges (1) that a co-worker called her ignorant, (2) that her supervisor Joleen Graff made her work on New Year's Eve, (3) that she challenged her performance review of June 27, 2002, and (4) that she was falsely accused of throwing a card at her supervisor Graff. These incidents do not have a racial character, that is, they are not sufficiently connected to race to fulfill the second element of a hostile work environment claim based on race. *See id.*

Further, Bridges has not established the third element of a hostile work environment claim, namely, her work situation was both subjectively and objectively offensive. *See Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 505 (7th Cir. 2004). In deciding whether particular conduct creates an objectively hostile work environment, the Court must examine the totality of the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Here, the conduct in question consists of isolated incidences, none of which were physically threatening or humiliating. *See Luckie*, 389 F.3d at 714. In addition, Bridges did not allege that this conduct interfered with her work performance.

Accordingly, Bridges has failed to establish that she was subjected to a racially hostile work environment. Therefore, judgment as a matter of law is appropriate.

## CONCLUSION

For these reasons, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff Gladis Bridges.

Dated: January 13, 2005

                **ENTERED**

                *[signature]*
                **AMY J. STEVE**
                **United States District Court Judge**